IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PIONEER EXPLORATION LTD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-07-798 |
| | § | |
| HAZEL RICHARD SAVOIE, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant Hazel Richard Savoie's Rule 12(b)

Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 8), and Plaintiff

Pioneer Exploration, Ltd.'s Response to Rule 12(b) Motion to Dismiss for Lack of

Jurisdiction (Document No. 11). Having considered the motions, submissions, and

applicable law, the Court determines Defendant's motion to dismiss should be denied,

and Plaintiff's request to transfer the case should be granted.

## BACKGROUND

Defendant Hazel Richard Savoie ("Savoie"), a resident of Louisiana, co-owns

property in Cameron Parish, Louisiana ("Louisiana Property"). In Louisiana on

January 30, 1987, Savoie, along with other co-owners, entered into a ten-year Surface

Lease ("lease") with Shell Western E&P, Inc. ("Shell") to operate oil and gas

1

equipment on the Louisiana Property.[1]  Although the lease was transferred to subsequent lessees, by 2004 it was held by Plaintiff Pioneer Exploration, Ltd. ("Pioneer"), a Texas Corporation with its principal place of business in Houston, Texas.[2]

In 2004, Pioneer sent a proposed ten-year extension of the lease to Lessors Savoie and Alice Richard ("Richard") to extend its lease interest in the Louisiana Property for an additional term of ten years.[3]  In April 2004, Pioneer and Richard entered into an agreement to extend the lease.  However, on February 28, 2007, Savoie sent a letter to Pioneer asserting its lease had terminated, and Pioneer was a trespasser on the Louisiana Property.

On March 7, 2007, Pioneer filed the case at bar against Savoie, seeking, *inter alia*, a declaratory judgment that Richard's agreement to extend the lease was legally

---

[1]The initial ten-year term expired on February 5, 1997.  However, the lease also included two five year extensions which were apparently executed.  Thus, the lease ultimately expired on February 5, 2007.

[2]The lease was assigned numerous times: from Shell to Onshore Properties, Inc. to Transworld Exploration and Production to Blue Star Resources, Ltd. to Pioneer.

[3]Although Pioneer does not fully explain Savoie and Richard's respective interests in the Louisiana Property, Pioneer asserts Richard holds a usufruct, or a life interest, in the Louisiana Property.  Apparently, Pioneer contends Richard, as co-lessor of the Louisiana Property, had the appropriate authority to extend the lease agreement with Pioneer.

2

sufficient to extend the lease on behalf of Savoie.[4] Pioneer also asserted a cause of action for anticipatory breach of contract based upon Savoie's letter announcing the lease had terminated and Pioneer was trespassing.

On June 22, 2007, Savoie moved to dismiss Pioneer's claims, asserting the Court does not have personal jurisdiction over her because she has no contacts with Texas. In response, Pioneer argues that Savoie has sufficient contacts in Texas because Pioneer sent payments and notices from Texas, Savoie sent her repudiation letter to Texas, she receives mineral or royalty interest payments and surface lease payments from Texas, Pioneer performs its contractual duties under the lease in Texas, and Savoie negotiated the lease extension with Pioneer, a Texas corporation.

In the alternative, Pioneer requests the Court to transfer the case to the Western District of Louisiana, the location of the Louisiana Property, if the Court finds there are insufficient contacts to subject Savoie to jurisdiction in Texas. Conversely, Savoie argues the dispute is being litigated in a pending Louisiana state court suit and asks the Court to dismiss Pioneer's complaint. Thus, the Court must determine whether Savoie has sufficient contacts that establish personal jurisdiction in Texas,

---

[4]Pioneer's complaint seeks a declaratory judgment under 22 U.S.C. § 2201. However, this statute does not pertain to declaratory judgment. Thus, the Court presumes Pioneer intended to seek a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201.

and if not, whether to transfer the case to the Western District of Louisiana or dismiss the suit.

## LAW AND ANALYSIS

### I. PERSONAL JURISDICTION

Savoie seeks to dismiss Pioneer's claim pursuant to Federal Rule of Civil Procedure 12(b) for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2). Specifically, Savoie argues the Southern District of Texas does not have personal jurisdiction over her because she resides in Louisiana, the property is located in Louisiana, and she has no contacts in Texas.

Where a nonresident defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving jurisdiction exists. *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), *cert. denied*, 126 S. Ct. 2968 (2006); *see also Saudi v. S/T Marine Atl.*, 159 F. Supp. 2d 469, 474 (S.D. Tex. 2000) (citation omitted). In ruling on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, a court must accept as true the uncontroverted allegations in the complaint and resolve any factual conflicts in favor of the plaintiff. *J.R. Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000). Therefore, although a plaintiff bears the burden of establishing jurisdiction, he is only required to present a prima facie case of personal

4

jurisdiction to satisfy his burden. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).

If a court dismisses a plaintiff's claims for lack of personal jurisdiction, a court must dismiss the claims without prejudice because the dismissal is not a judgment on the merits. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999). Thus, Pioneer, the party that invoked the federal court's jurisdiction, bears the burden of establishing that Savoie, a nonresident defendant, has minimum contacts with Texas that warrant the exercise of personal jurisdiction over her. *See Luv n' Care, Ltd.*, 438 F.3d at 469.

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if 1) the defendant is amenable to service of process under the forum state's long-arm statute; and 2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Freudensprung v. Offshore Technical Servs., Inc.*, 372 F.3d 327, 343 (5th Cir. 2004); *J.R. Stripling*, 234 F.3d at 869; *Saudi*, 159 F. Supp. 2d at 473 (citing *Jones v. Petty-Ray Geophysical Geosource Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)). Because the Texas long-arm statute extends personal jurisdiction to the permissible limits of the Due Process Clause of the United States Constitution, this two-part jurisdictional inquiry collapses into a single due process inquiry. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418

(5th Cir. 1993); *accord Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 n.1 (5th Cir. 2007).

In order for personal jurisdiction to satisfy due process requirements, Pioneer must show 1) Savoie purposely availed herself of the benefits and protections of this state by establishing minimum contacts with Texas, and 2) the exercise of personal jurisdiction over her does not offend traditional notions of fair play and substantial justice.[5] *See Moncrief Oil Int'l Inc.*, 481 F.3d at 311 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "constitutional touchstone" of the personal jurisdiction inquiry is whether a defendant purposefully established minimum contacts in the forum state.[6] *Seiferth*, 472 F.3d at 271; *see also Saudi*, 159

---

[5]If a court finds a nonresident defendant's contacts are sufficient to establish that it has minimum contacts with the forum state, it must then examine whether the exercise of jurisdiction is fair by examining several factors relating to traditional notions of fair play and substantial justice. *Saudi*, 159 F. Supp. 2d at 474. These factors include 1) the burden on the nonresident defendant; 2) the interests of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in the most efficient resolution of controversies; and 5) the shared interests of the several states in furthering fundamental social policies. *See id.* (citing *Felch v. Transportes Lar-Mex S.A. de C.V.*, 92 F.3d 320, 324 (5th Cir. 1996)). However, if a defendant does not have the necessary minimum contacts, a court need not evaluate whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. *See Freudensprung v. Offshore Technical Servs., Inc.*, 186 F. Supp. 2d 716, 724 (S.D. Tex. 2002).

[6]Personal jurisdiction can be general or specific. *Seiferth*, 472 F.3d at 271. If a defendant's contacts with the forum state are "continuous and systematic," a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts. *Id.* If a defendant has relatively few contacts, a court may exercise specific jurisdiction "in a suit arising out of or related to the

6

F. Supp. 2d at 473 (finding that a nonresident defendant must have purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws, to establish minimum contacts). For personal jurisdiction to be proper, a defendant's actions should be such that he or she "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297 (1980).

A court may not exercise jurisdiction over a defendant based only on its random, fortuitous, or attenuated contacts with the forum state. *Moncrief Oil Int'l Inc.*, 481 F.3d at 312. A plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state. *Id.* at 311-12 (finding that an exchange of communications in the course of developing and carrying out a contract does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law). To avoid exercising jurisdiction over a defendant based upon mere fortuitous contacts, a court evaluates multiple factors to determine whether a defendant purposefully established minimum contacts within the forum. *Id.* at 312.

Pioneer asserts Savoie has sufficient contacts with Texas to establish general

defendant's contacts with the forum." *Id.* (citation omitted). Pioneer avers Savoie has continuous and systematic contacts with Texas that satisfy general jurisdiction over her.

jurisdiction because 1) Savoie received payments from Texas; 2) the parties negotiated the lease extension in Texas; 3) Savoie's attorney sent a letter to Pioneer declaring the lease was void, and Pioneer was therefore trespassing on her property; and 4) Pioneer performed its contractual duties under the lease in Texas.[7]

First, Savoie's accepting checks from Texas does not indicate she has sufficient contacts to subject her to jurisdiction in Texas. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 416 (1984) (explaining that absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is not an appropriate consideration for determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction). This principal also applies to any alleged mineral, royalty, or surface lease payments Savoie received from Texas.

Second, Pioneer and Savoie's communications and negotiations regarding the lease extension do not constitute the required purposeful availment of the benefits and protections of Texas law. *See Moncrief Oil Int'l Inc.,* 481 F.3d at 312-13 (finding that a defendant's contacts in Texas, based upon entering into a contract with a Texas

---

[7]The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum. *See Saudi,* 159 F. Supp. 2d at 473-74 (finding that the minimum contacts review is more demanding and broader for general jurisdiction than for specific jurisdiction and requires a plaintiff to demonstrate substantial activities in the forum state).

resident and sending an executive to Texas, were irrelevant and mere fortuity when, *inter alia*, all agreements were with a Russian corporation, were executed in Russia, and concerned a Russian joint venture).

Similarly, Pioneer may not rely on the fact that Savoie's attorney sent a letter to Pioneer in Houston even if it constituted the anticipatory breach of the lease agreement. Savoie and her attorney's sending a letter to the company that is located in Texas is a random, fortuitious contact because Savoie and her attorney would have sent the letter to whatever state in which Pioneer was located. *See id.* at 312 (explaining that communications in carrying out a contract do not establish personal jurisdiction because if they did, jurisdiction could be exercised only on the fortuity that one of the parties happens to reside in the forum state).

Finally, the Court disagrees that the contract is performed in Texas. Because Pioneer, pursuant to the lease, operates oil and gas equipment on Savoie's property in Louisiana, the lease is performed in Louisiana even if Pioneer's accounting and corporate headquarters are located in Texas. Based upon a lease between a Texas corporation and a Louisiana resident, concerning property that is located in Louisiana, and an alleged breach that took place in Louisiana, the Court finds Pioneer fails to establish Savoie has sufficient minimum contacts to subject her to jurisdiction in Texas. *See Moncrief Oil Int'l Inc.*, 481 F.3d at 312; *see also Luv n' care, Ltd.*, 438

F.3d at 469.  Thus, Savoie is not subject to personal jurisdiction in Texas.  *See Moncrief Oil Int'l Inc.*, 481 F.3d at 311.

## II. DISMISSAL OR TRANSFER

Pioneer avers even if the Court does not have personal jurisdiction in Texas, there is personal jurisdiction over Savoie in the Western District of Louisiana and therefore, requests that the Court transfer the case to Louisiana pursuant to 28 U.S.C. § 1404(a) ("§ 1404").  In response, Savoie seeks to dismiss the suit, arguing Pioneer filed a groundless suit in Texas because the lease is unequivocally terminated and the lease extension is not valid under Louisiana law.  Moreover, Savoie asserts she and other plaintiffs filed suit in Louisiana state court against, *inter alia*, Pioneer and co-lessor Richard, alleging negligence, breach of contract, trespass, and environmental damages.  Thus, although Savoie has no minimum contacts with Texas, the Court must determine whether to dismiss the suit or transfer it to the Louisiana district court.

Although Savoie requests the Court to dismiss the suit because of litigation in Louisiana state court, federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred upon them.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 538 (5th Cir. 2002) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  However, a court may abstain from a

case that is part of parallel, duplicative litigation under exceptional circumstances. *See Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (citing *Colo. River Water Conservation Dist.*, 424 U.S. at 800). However, this doctrine only applies when the suits are parallel. *Diamond Offshore Co.*, 302 F.3d at 540. Suits are parallel for the purposes of determining whether *Colorado River* abstention applies, if they involve the same parties and the same issues. *Id.*

Savoie does not assert the suits are parallel, but alleges "some of the same issues that will have to be decided in this litigation will also have to be decided as part of the Louisiana suit." She also states the Louisiana state court suit involves additional parties. Because the Louisiana suit does not involve the same parties and same issues, the Court finds the suits are not parallel. *See id.* As a result, the *Colorado River* abstention doctrine does not apply to allow the Court discretion to abstain from exercising jurisdiction over Pioneer's claims. *See id.* (explaining the district court erred in failing to exercise jurisdiction over a plaintiff's breach of contract claim, and the *Colorado River* abstention doctrine did not apply because plaintiff's federal case was not parallel with the state court proceedings).

Although the Court finds no personal jurisdiction over Savoie in Texas, the Court has jurisdiction to transfer the case to Louisiana. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) (citing *Goldlawr, Inc.*

11

*v. Heiman*, 369 U.S. 463, 466 (1962)); *PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 460 n.7 (5th Cir. 2001); *see also Fogarty v. USA Truck, Inc.*, No. 056-11151, 2007 WL 2037816, at *1 (5th Cir. July 11, 2007). A district court in which a jurisdictionally improper case is filed is empowered by § 1404(a) or § 1406(a) either to dismiss the case, or "if it be in the interest of justice," to transfer it to another venue where jurisdiction may be had.[8] *Self v. M&M Chem. Co.*, 177 F.3d 977, 1999 WL 195576, at *4 (5th Cir. 1999). The congressional purpose in allowing such transfers is to avoid the injustice which often resulted to plaintiffs from dismissal of their actions merely because they "had made an erroneous guess with regard to the existence of some elusive fact." *Id.* (quoting *Goldlawr, Inc.*, 369 U.S. at 466). Moreover, § 1406(a) provides a remedy where venue was laid in an otherwise correct district except that the court could not obtain personal jurisdiction over the defendant.[9] *See Crase v. Astroworld, Inc.*, 941 F.2d 265, 267 n.5 (5th Cir. 1991) (citing *Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967)).

---

[8]A transfer pursuant to § 1404(a) is made for the convenience of the parties, and a transfer pursuant to § 1406(a) is based upon improper venue. *See Emke v. Campana*, L.L.C., Civ. A. No. 3:06-CV-1416-L, 2007 WL 2781661, at *4 (N.D. Tex. Sept. 25, 2007). Because the Court finds there is no personal jurisdiction over Savoie in Texas, Pioneer relies on § 1406(a) to request a transfer for improper venue.

[9]The statute states, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2006).

Although Pioneer's original complaint asserts venue is proper in the Southern District of Texas because Savoie sent a letter to Pioneer in Houston, Pioneer may have incorrectly believed the breach of contract occurred in Texas. Because federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred upon them and venue is proper in the Western District of Louisiana, the Court finds it is in the interest of justice to grant Pioneer's request to transfer the case where venue is proper.[10] *See Diamond Offshore Co.*, 302 F.3d at 538. Given the foregoing, the Court hereby

ORDERS that Defendant Hazel Richard Savoie's Rule 12(b) Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 8) is DENIED. The Court further

ORDERS that Plaintiff Pioneer Exploration, Ltd.'s Response to Rule 12(b) Motion to Dismiss for Lack of Jurisdiction (Document No. 11) requesting transfer is GRANTED. This case is hereby TRANSFERRED to the United States District Court for the Western District of Louisiana.

---

[10]Pursuant to 28 U.S.C. § 1391(a)(2), venue in this case is proper in the Western District of Louisiana because it is the location of the Louisiana Property).

SIGNED at Houston, Texas, on this **29** day of November, 2007.

DAVID HITTNER
United States District Judge